**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| DELLA TAYLOR, | ) | |
| | ) | |
| Plaintiff, | ) | Case No.: |
| | ) | |
| v. | ) | |
| | ) | Complaint for violation of Civil Rights |
| CITY OF CHICAGO POLICE | ) | |
| OFFICERS RONALD NORWAY, | ) | **JURY DEMANDED** |
| STAR NO. 6797, EDWIN UTRERAS, | ) | |
| STAR NO. 19901, SCOTT MCKENNA, | ) | |
| STAR NO. 3942, JOY MCCLAIN | ) | |
| STAR NO. 4915, UNKNOWN AND | ) | |
| UNNAMED CITY OF CHICAGO | ) | |
| POLICE OFFICERS, and THE CITY OF | ) | |
| CHICAGO, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

## JURISDICTION AND VENUE

1.     This action arises under the United States Constitution and the Civil Rights Act of 1871 (42 U.S.C. Section 1983). This court has jurisdiction under and by virtue of 28 U.S.C. Sections 1343 and 1331.

2.     Venue is founded in this judicial court upon 28 U.S.C. Section 1391 as the acts complained of arose in this district.

## PARTIES

3.     At all times herein mentioned, Plaintiff DELLA TAYLOR (hereinafter "Plaintiff"), was and is a citizen of the United States and was within the jurisdiction of this court.

4.     At all times herein mentioned, OFFICER RONALD NORWAY, was employed by the City of Chicago Police Department and was acting under color of state law and as the employee, agent, or representative of the City of Chicago Police Department. Defendant

1

NORWAY has at least fifty-eight (58) misconduct complaints against him. Defendant is being sued in his individual capacity.

5. At all times herein mentioned, OFFICER EDWIN UTRERAS, was employed by the City of Chicago Police Department and was acting under color of state law and as the employee, agent, or representative of the City of Chicago Police Department. Defendant UTRERAS has at least forty-seven (47) misconduct complaints against him. Defendant is being sued in his individual capacity.

6. At all times herein mentioned, OFFICER SCOTT MCKENNA, was employed by the City of Chicago Police Department and was acting under color of state law and as the employee, agent, or representative of the City of Chicago Police Department. Defendant MCKENNA has at least sixty-eight (68) misconduct complaints against him. Defendant is being sued in his individual capacity.

7. At all times herein mentioned, OFFICER JOY MCCLAIN, was employed by the City of Chicago Police Department and was acting under color of state law and as the employee, agent, or representative of the City of Chicago Police Department. Defendant MCCLAIN has at least twenty-six (26) misconduct complaints against her. Defendant is being sued in her individual capacity.

8. Unknown and unnamed officers, collectively with above-named Defendants (hereinafter "Defendant Officers"), were employed by the City of Chicago Police Department and were acting under color of state law and as the employee, agent, or representative of the City of Chicago Police Department. These Defendants are being sued in their individual capacities.

9. At all times herein mentioned, the CITY OF CHICAGO was a political division of the State of Illinois, existing as such under the laws of the State of Illinois. At all relevant times,

2

the CITY OF CHICAGO maintained, managed, and/or operated the CITY OF CHICAGO Police Department.

## FACTUAL ALLEGATIONS

10.     On December 10, 2018, Plaintiff lawfully resided at 602 W. 111th St., City of Chicago, County of Cook, Illinois.

11.     On that date, Plaintiff and her two sons resided at 602 W. 111th St., City of Chicago, County of Cook, Illinois.

12.     Upon information and belief, on December 10, 2018, Defendant Utreras falsified information to fraudulently obtain a "J.Doe" search warrant to search Plaintiff's residence.

13.     The target of the search warrant was an unknown male black nicknamed "T-man.''

14.     None of the individuals that lawfully resided at 602 W. 111th St., City of Chicago, County of Cook, Illinois have ever been referred to as "T-man."

15.     At no point on December 10, 2018 was there any individual present at Plaintiff's residence with the nickname "T-man."

16.     The alleged purpose of the search warrant was to obtain evidence of cocaine possession and/or cocaine sales.

17.     On December 10, 2018, the Defendants executed the search warrant at Plaintiff's residence.

18.     There was no legal or probable cause for the Defendant Officers to enter the residence or conduct a search of the residence other than the search warrant

19.     Defendant Officers did not have consent to enter the residence.

20.     After a lengthy search of Plaintiff's residence Defendants Utreras, McClain, Mckenna and Norway failed to recover any evidence of cocaine or cocaine sales. Despite this, in their police

reports Defendant Officers falsely claimed to have recovered .4 grams of crack cocaine and a digital scale.

21.     During the course of executing the search warrant Defendant Officers unreasonably and unnecessarily caused significant property damage to Plaintiff's home.

22.     On December 10, 2018, Plaintiff had approximately $1500 U.S. currency in her bedroom, this U.S. currency was set aside by Plaintiff in order to pay for Christmas gifts.

23.     In December 2018, Plaintiff was gainfully employed as a personal assistant and was making $12 an hour.

24.     During the execution of the search of Plaintiff's residence, Defendants located and illegally seized Plaintiff's U.S. currency.

25.     The Defendants failed to properly inventory all of the U.S. currency at the Plaintiff's residence, thus stealing property.

26.     Defendant Officers did not record their conduct during the execution of the search warrant with body worn cameras.

27.     By reason of the above-described acts and omissions of Defendant Officers, Plaintiff sustained injuries, including but not limited to, loss special damages, humiliation and indignities, and suffered great mental and emotional pain and suffering all to her damage in an amount to be ascertained.

28.     The aforementioned acts of Defendant Officers were willful, wanton, malicious, oppressive and done with reckless indifference to and/or callous disregard for Plaintiff's rights and justify the awarding of exemplary and punitive damages in an amount to be ascertained according to proof at the time of trial.

29.     By reason of the above-described acts and omissions of Defendant Officers, Plaintiff was required to retain an attorney to institute, prosecute and render legal assistance to her in the within

action so that she might vindicate the loss and impairment of her rights.  By reason thereof, Plaintiff requests payment by Defendants of a reasonable sum for attorney's fees pursuant to 42 U.S.C. Section 1988, the Equal Access to Justice Act or any other provision set by law.

## COUNT I
## PLAINTIFF AGAINST ALL INDIVIDUAL KNOWN AND UNKNOWN DEFENDANTS AND OTHERS, FOR UNREASONABLE SEARCH

30.     Plaintiff hereby incorporates and realleges paragraphs one (1) through twenty-nine (29) hereat as though fully set forth at this place.

31.     By reason of Defendants' conduct, Plaintiff was deprived of rights, privileges and immunities secured to her by the Fourth Amendment of the Constitution of the United States and laws enacted thereunder.

32.     The arbitrary intrusion by Defendants, into the security and privacy of Plaintiff's home was in violation of Plaintiff's constitutional rights and not authorized by law. Defendants violated Plaintiff's rights in the following manner:  1) causing excessive and unnecessary property damage to Plaintiff's home; and 2) the removal of property including U.S. currency. These acts were in violation of Plaintiff's Fourth Amendment rights.   Therefore, Defendants, in their individual capacity, are liable to Plaintiff pursuant to 42 U.S.C. § 1983.

## COUNT II
## PLAINTIFF AGAINST DEFENDANT UTRERAS FOR UNREASONABLE PROCUREMENT OF A SEARCH WARRANT

33.     Plaintiff hereby incorporates and realleges paragraphs one (1) through twenty-nine (29) hereat as though fully set forth at this place.

34.     Defendant Utreras procured a search warrant identifying Plaintiff's residence as the premises to be searched and identified the target of the search as an unknown individual nicknamed "T-man."

35.     Procurement of the search warrant was unreasonable and unconstitutional for one or more of the following reasons:

      a.  relied upon a confidential informant who had not previously provided reliable information in order to obtain the warrant;

      b.  failed to independently verify necessary information provided by the confidential informant prior to obtaining the warrant;

      c.  failing to advise the Assistant State's Attorney approving the warrant application and the judge issuing the warrant of all available relevant information related to Plaintiffs' home and Plaintiffs;

      d.  failing to be truthful with the Assistant State's Attorney approving the warrant application and the judge issuing the warrant regarding all information provided by any alleged confidential information or J. Doe informant, and corroboration of that information and lack thereof.

36.     No reasonably well-trained police officer in the position of Defendant Utreras would have applied for the search warrant obtained by Utreras, and it was done intentionally or with reckless disregard of the rights of Plaintiffs.

37.     As a result of Defendant Utreras unreasonable procurement of the search warrant Plaintiff sustained damages including but not limited to property damage, property loss, and emotional distress.

38.     By reason of the conduct of Defendants and each of them, Plaintiff was deprived of rights, privileges and immunities, secured to him by the Fourth Amendment to the Constitution of the United States and laws enacted thereunder.

39.     The procurement of the search warrant was in violation of Plaintiff's constitutional rights and not authorized by law. The foregoing was unnecessary, unreasonable and excessive, and

in violation of Plaintiff's Fourth Amendment rights under the U.S. Constitution. Therefore, Utreras, in his individual capacity is liable to Plaintiff's pursuant 42 U.S.C. § 1983.

## COUNT III
## PLAINTIFF AGAINST THE CITY OF CHICAGO FOR *MONELL* LIABILITY

40.     Plaintiff incorporates and realleges paragraphs one (1) through twenty-nine (29) hereat as though fully set forth at this place.

41.     The misconduct of the Chicago Police Department and Police Officers described above was undertaken pursuant to the practice of the Chicago Police Department in that as a matter of practice, the Chicago Police Department encourages the very type of misconduct at issue here by failing to adequately train, supervise, control and/or discipline its officers, such that its failure to do so manifests deliberate indifference.

42.     The misconduct of the Defendant Officers was facilitated by the Chicago Police Department's deficient policies and procedures relating to obtaining and executing search warrants. This misconduct included failing to make reasonable efforts to corroborate or properly investigate information provided by informants, fabricating or concealing material information in order to obtain warrants, and failing to record the execution of search warrants with body worn cameras in order to hold officers accountable and deter misconduct during the execution of search warrants.

43.     As a matter of practice, the Chicago Police Department facilitates the type of misconduct at issue by failing to adequately punish and discipline prior instances of similar misconduct, thereby leading Chicago Police Officers to believe their actions will never be scrutinized and, in that way, directly encouraging future abuses such as those affecting Plaintiff. Specifically, Chicago Police officers accused of civil rights violations can be confident that neither the Independent Review Authority, COPA, nor Internal Affairs will reasonably investigate those accusations, and will refuse to recommend discipline even where the Officer has violated rights of citizens.

44. The Chicago Police Department has a widespread "code of silence" wherein police officers will not report misconduct committed by fellow officers.

45. Municipal policy-makers are aware of, and condone and facilitate by their inaction, a "code of silence" in the Chicago Police Department. For example, on December 8, 2015, Rahm Emmanuel, Mayor of the City of Chicago, stated publicly that Chicago Police officers maintain this "code of silence."

46. On December 8, 2015 Mayor Emanuel was asked the following question and gave the following answer during a television interview on WTTW in Chicago, Illinois:

Question: I want to ask you point blank, is there a code of silence that exists     among Chicago police officers?

Answer: The short answer is, yes.

47. Mayor Lori Lightfoot prior to her 2019 election was Chairperson of the Chicago Police Accountability Taskforce. In 2016, the Chicago Police Accountability Taskforce acknowledged the "code of silence" within the Chicago Police Department.

48. Several of the individual Defendants in this case have had dozens of citizens' complaints filed against them without the City of Chicago implementing any discipline against them.

49. For example, Defendant McClain has at least twenty-six (26) misconduct complaints filed against her. Three (3) of those misconduct complaints include allegations that she engaged in an illegal search. None of McClain's misconduct complaints relating to illegal search have led to any discipline by the City of Chicago.

50. Defendant Utreras has at least forty-seven (47) misconduct complaints against him. Sixteen (16) of those misconduct complaints include allegations that Utreras engaged in an illegal search. None of Utreras' misconduct complaints relating to illegal search have led to any discipline by the City of Chicago.

8

51.     Defendant Norway has at least fifty-eight (58) misconduct complaints against him.   Twenty-eight (28) of those misconduct complaints include allegations that Norway engaged in an illegal search. Norway has not been disciplined by the City of Chicago for any of fifty-eight (58) misconduct complaints against him.

52.     Defendant McKenna has at least sixty-eight (68) misconduct complaints against him. Twenty-eight (28) of those misconduct complaints include allegations that McKenna engaged in an illegal search. None of McKenna's misconduct complaints relating to illegal search have led to any discipline by the City of Chicago.

53.     Generally, as a matter of widespread practice so prevalent as to comprise municipal policy, officers of the Chicago Police Department abuse citizens in a manner similar to that alleged herein on a frequent basis, yet the Chicago Police Department makes findings of wrongdoing in a disproportionately small number of cases.

54.     The City of Chicago has failed to act to remedy the patterns of abuse described in the preceding paragraphs, despite actual knowledge of the same, thereby causing the types of injuries alleged here.

55.     In January 2017, The U.S. Department of Justice issued a report based upon an extensive investigation into the practices of the Chicago Police Department. This report included the following findings:

        a.   The City of Chicago's accountability systems for Chicago Police Officers contribute a pattern or practice of unconstitutional conduct;

        b.   The City of Chicago's Policies and Practices impede the investigation of Police Officer misconduct;

        c.   Investigations into police misconduct are neither fair nor complete;

9

      d.   The City of Chicago and the Chicago Police Department do not take sufficient

           steps to prevent officers from deliberately concealing misconduct; and

      e.   The City of Chicago's discipline system for Chicago Police Officers lacks

           integrity and does not effectively deter misconduct.

56.     As a matter of express policy, the City of Chicago refuses to take into consideration patterns of allegations of civil rights violations when evaluating the merits of any particular complaint. In other words, if a police officer is accused of the same kind of misconduct multiple times IAD, IPRA and/or COPA will not consider those allegations if they are deemed unsustained.

57.     Even in instances when the City of Chicago has paid thousands of dollars to settle claims and/or satisfy judgments that resulted from the misconduct of its officers it refuses to investigate and/or reinvestigate misconduct by its police officers.

58.     In 2018, the City of Chicago paid more than $113 million to settle Chicago Police misconduct cases putting the City of Chicago on notice regarding failed policies, practices and customs.

59.     Additionally, Defendant Officers have been the subject of multiple federal lawsuits regarding illegal searches based on false or fabricated information obtained in search warrants, such as the allegations in this matter.

60.     For example, Defendants McClain and Norway settled case number 19-CV-1831 which involved similar allegations as to this matter in that Defendants McClain and Norway conducted an illegal search based on a search warrant containing false and fabricated information that targeted an unknown male black with nickname "Deebo."

61.     Another illustrative example involving Defendant McKeena is case number 14-CV-1756 which settled and involved similar allegations to this mater in that McKeena conducted

an illegal search based on a search warrant containing false and fabricated information that targeted an unknown male black with nickname "Gino."

62.     Illustrative but non-exhaustive, highly publicized accounts of the Chicago Police Department utilizing false information to obtain search warrants, fabricating evidence and falsifying police reports, and/or executing search warrants illegally, have further put the City of Chicago on notice regarding failed policies, practices and customs. This includes the wrongful convictions procured by Chicago Police Officer Ronald Watts by framing innocent men and the illegal search warrants procured by Chicago Police Officer David Salgado and Xavier Elizondo who fabricated evidence and bribed confidential informants to lie to judges.

63.     Plaintiffs allege that these customs, policies and practices, described above, were the moving force behind the violations of the Plaintiffs' rights. Based upon the principles set forth in *Monell v. New York City Department of Social Services*, the City of Chicago is liable for all the harm done to Plaintiff as set forth above.

WHEREFORE, the Plaintiff, by and through her attorneys, ED FOX & ASSOCIATES, requests judgment as follows against the Defendants, and each of them:

1.      That individual Defendants and each of them and other unnamed and unknown Defendants be required to pay Plaintiff's general damages, including emotional distress, in a sum to be ascertained;

2.      That these same Defendants be required to pay Plaintiff's special damages;

3.      That these same Defendants other than the City of Chicago be required to pay Plaintiff's attorneys fees pursuant to Section 1988 of Title 42 of the United States Code, the Equal Access to Justice Act or any other applicable provision;

4.      That the individual Defendants and each of them and other unnamed and unknown Defendants other than the City of Chicago be required to pay punitive and exemplary damages in a sum to be ascertained;

5.      That the Defendants be required to pay Plaintiff's costs of the suit herein incurred; and

6.      That Plaintiff have such other and further relief as this Court may deem just and proper.

BY:     s/ Jaclyn N. Diaz
        ED FOX & ASSOCIATES
        Attorneys for Plaintiff
        300 West Adams
        Suite 330
        Chicago, Illinois 60606
        (312) 345-8877
        jdiaz@efoxlaw.com

**PLAINTIFF HEREBY REQUESTS A TRIAL BY JURY**

BY:     s/Jaclyn N. Diaz
        ED FOX & ASSOCIATES
        Attorneys for Plaintiff
        300 West Adams
        Suite 330
        Chicago, Illinois 60606
        (312) 345-8877
        jdiaz@efoxlaw.com