IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DELLA TAYLOR, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 20-cv-7001 |
| | ) | |
| v. | ) | Judge Robert M. Dow, Jr. |
| | ) | |
| CITY OF CHICAGO POLICE OFFICER | ) | |
| RONALD NORWAY, *et al.* | ) | |
| | ) | |
| Defendants. | | |

**MEMORANDUM OPINION AND ORDER**

Della Taylor brought a 42 U.S.C. § 1983 claim [1] against several individual Chicago Police Department ("CPD") Defendants and the City of Chicago ("Defendant"), alleging that a search of her home violated her constitutional rights. The City moved to dismiss the *Monell* claim against it. [16]. For the reasons below, Defendant's motion [16] is denied. Counsel are directed to file a joint status report no later than September 24, 2021 that includes (a) a proposed discovery plan and (b) a statement in regard to any settlement discussions and/or any mutual request for a referral to the assigned Magistrate Judge for a settlement conference. The Court will set further case management deadlines following review of the joint status report.

**I.      Background**[1]

On December 10, 2018, Officer Utreras falsified information to fraudulently obtain a "J. Doe" search warrant to search Plaintiff's residence in order to obtain evidence of cocaine possession and/or sales. [1, at ¶¶ 12, 16]. The target of the search warrant was an unknown Black male nicknamed "T-man." [*Id.*, at ¶ 13]. None of the individuals residing at Plaintiff's residence

---

[1] The Court accepts as true all of Plaintiff's well-pleaded factual allegations and draws all reasonable inferences in Plaintiff's favor. *Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).

went by "T-man," and there was no such individual present at any point on December 10, 2018. [*Id.*, at ¶¶ 14–15]. That same day, the officers executed the search warrant at Plaintiff's residence; the only legal basis for their entry was the search warrant. [*Id.*, at ¶¶ 17–19]. During the search, officers unreasonably and unnecessarily caused significant property damage to Plaintiff's home. [*Id.*, at ¶ 21]. The officers also seized $1500 in cash from Plaintiff's bedroom that she had set aside to pay for Christmas gifts; they did not properly inventory all of the cash. [*Id.*, at ¶¶ 22, 24–25]. Further, despite not obtaining any evidence of cocaine or cocaine sales, the officers claimed in their police reports that they recovered .4 grams of crack cocaine and a digital scale. [*Id.*, at ¶ 20].

Plaintiff subsequently brought this lawsuit, alleging Fourth Amendment violations based on an unreasonable search and illegal procurement of a search warrant. [*Id.*, at ¶¶ 30–39]. Plaintiff also brought a *Monell* claim against the City of Chicago. [*Id.*, at ¶¶ 40–63]. Relevant to her *Monell* claim, Plaintiff alleges that the officers' misconduct occurred because the city "fail[ed] to adequately train, supervise, control and/or discipline its officers, such that its failure to do so manifests deliberate indifference." [*Id.*, at ¶ 41]. The misconduct included "failing to make reasonable efforts to corroborate or properly investigate information provided by informants, fabricating or concealing material information in order to obtain warrants, and failing to record the execution of search warrants with body worn cameras in order to hold officers accountable and deter misconduct during the execution of search warrants." [*Id.*, at ¶ 42]. Plaintiff alleges that, "[a]s a matter of practice, the Chicago Police Department facilitates the type of misconduct at issue by failing to adequately punish and discipline prior instances of similar misconduct, thereby leading Chicago Police Officers to believe their actions will never be scrutinized and, in that way, directly encouraging future abuses such as those affecting Plaintiff." [*Id.*, at ¶ 43]. This is because

"Chicago Police officers accused of civil rights violations can be confident that neither the" Independent Police Review Authority ("IPRA"), Civilian Office of Police Accountability ("COPA"), "nor Internal Affairs will reasonably investigate those accusations, and will refuse to recommend discipline even where the Officer has violated rights of citizens." [*Id.*]. In short, Plaintiff alleges that the department has a widespread code of silence that encourages misconduct because officers know that they may act with impunity.

In support of this code-of-silence allegation, Plaintiff first notes that on December 8, 2015, then-Mayor Rahm Emanuel stated publicly that CPD officers maintain a code of silence. [*Id.*, at ¶ 45]. Current Mayor Lori Lightfoot was the Chairperson of the Chicago Police Accountability Taskforce, which acknowledged CPD's code of silence in 2016. [*Id.*, at ¶ 47]. And, in 2017, the Department of Justice issued a report about CPD ("DOJ report"), which found that the city's process for investigation and disciplining officers is inadequate, lacks integrity, does not effectively deter misconduct, and contributes to a pattern or practice of unconstitutional conduct. [*Id.*, at ¶ 55]. Plaintiff also alleges that the disciplinary system is ineffective because "if a police officer is accused of the same kind of misconduct multiple times IAD, IPRA and/or COPA will not consider those allegations if they are deemed unsustained." [*Id.*, at ¶ 56].

Specific to some Defendants here, Defendant McClain has at least 26 misconduct complaints filed against her, three of which relate to illegal searches. [*Id.*, at ¶ 49]. Defendant Utreras has at least 47 misconduct complaints filed against him, 16 of which relate to illegal searches. [*Id.*, at ¶ 50]. Defendant Norway has at least 58 misconduct complaints filed against him, 28 of which relate to illegal searches. [*Id.*, at ¶ 51]. Defendant McKenna has at least 68 misconduct complaints filed against him, 28 of which relate to illegal searches. [*Id.*, at ¶ 52]. None of the complaints related to illegal searches against any of these Defendants led to any

discipline. [*Id.*, at ¶ 49–52]. Some Defendants were also involved in lawsuits. Specifically, Defendants McClain and Norway settled a case (19-cv-1831) involving allegations that they conducted an illegal search based on a search warrant containing false and fabricated information that targeted and unknown Black male nicknamed "Deebo." [*Id.*, at ¶ 60]. Defendant McKeena settled a case (14-cv-1756) involving allegations that he conducted an illegal search based on a search warrant containing false and fabricated information that targeted an known Black male nicknamed "Gino." [*Id.*, at ¶ 61].

The City of Chicago has moved to dismiss the *Monell* claim against it. [16].

## II. Legal Standard

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, the complaint typically must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), such that the defendant is given "fair notice of what the * * * claim is and the grounds upon which it rests." *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S at 555). In determining whether the complaint meets this standard, the Court accepts as true all of Plaintiff's well-pleaded factual allegations and draws all reasonable inferences in Plaintiff's favor. *Killingsworth*, 507 F.3d at 618.

## III. Analysis

"Municipalities do not face respondeat superior liability under section 1983 for the misdeeds of employees or other agents. Only actions of the entity will suffice." *Flores v. City of South Bend*, 997 F.3d 725, 731 (7th Cir. 2021); see also *Monell v. Dep't of Social Services of City*

of New York*, 436 U.S. 658, 691 (1978). "Accordingly, to prevail on a § 1983 claim against a municipality under *Monell*, a plaintiff must challenge conduct that is properly attributable to the municipality itself." *First Midwest Bank Guardian of Estate of LaPorta v. City of Chicago*, 988 F.3d 978, 986 (7th Cir. 2021) (citing *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 403–04 (1997)). The Seventh Circuit has "interpreted this language to include three types of actions that can support municipal liability under § 1983: '(1) an express policy that causes a constitutional deprivation when enforced; (2) a widespread practice that is so permanent and well-settled that it constitutes a custom or practice; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority.'" *Id.* (quoting *Spiegel v. McClintic*, 916 F.3d 611, 617 (7th Cir. 2019)). "The central question under *Monell* is 'always whether an official policy, however expressed[,] * * * caused the constitutional deprivation.'" *Turner v. Paul*, 953 F.3d 1011, 1016 (7th Cir. 2020) (alterations in original) (quoting *Glisson v. Indiana Dep't of Corrections*, 849 F.3d 372, 378 (7th Cir. 2017)).

*Monell* claims are not subject to a heightened pleading standard. See *White v. City of Chicago*, 829 F.3d 837, 843–44 (7th Cir. 2016); *Latuszkin v. City of Chicago*, 250 F.3d 502, 504 (7th Cir. 2001). That said, the Seventh Circuit has held that to state a *Monell* claim, a plaintiff must plead "factual content that allows the court to draw the reasonable inference" that the municipality maintained a policy or custom that caused the alleged constitutional deprivation. *McCauley v. City of Chicago*, 671 F.3d 611, 615 (7th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 678). Mere "legal conclusions or elements of the cause of action" must be disregarded. *Id.* at 617. Thus, boilerplate allegations that repeat the elements of a *Monell* claim without any further factual content have been dismissed for failure to state a claim. See, *e.g.*, *Falk v. Perez*, 973 F.Supp.2d 850, 864 (N.D. Ill. 2013) ("[B]y alleging 'widespread practices,' 'customs,' and 'unofficial

policies,' Plaintiff merely states boilerplate legal conclusions that are the elements of her *Monell* claim."); *Annan v. Vill. of Romeoville*, 2013 WL 673484, at *6 (N.D. Ill. Feb. 25, 2013) (holding that an allegation that defendant "maintains a policy by which officers use excessive force to arrest individuals with no probable cause or reasonable suspicion warranting such" was insufficient to state a *Monell* claim); *Sheppard v. Vill. of Glendale Heights*, 2011 WL 6102012, at *4 (N.D. Ill. Dec. 5, 2011) (holding that an allegation that plaintiff was discriminated against on the basis of her sex and race "pursuant to wide-spread practice" of the defendant was insufficient to state a *Monell* claim).

Plaintiff's complaint suggests two primary theories of municipal liability: (1) failure to train and (2) that a widespread custom of lack of discipline created a code of silence through which officers are empowered to commit constitutional violations, including illegal and unreasonable searches. The City argues that Plaintiff failed to state a claim under either theory because the complaint does not adequately allege (1) a widespread custom or policy, (2) that the City was deliberately indifferent, or (3) that any widespread custom or policy caused the constitutional violation.

### A. Failure to Train

With respect to her failure-to-train theory, Plaintiff merely alleges that "the Chicago Police Department encourages the very type of misconduct at issue here by failing to adequately train, supervise, control and/or discipline its officers, such that its failure to do so manifests deliberate indifference." [8, at ¶ 41]. The City argues that this allegation is insufficient to plead a failure-to-train claim. [16, at 13–14; 18, at 7–8]. The Court agrees. "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). "The required level of factual specificity rises with the

complexity of the claim." *McCauley*, 671 F.3d at 616–17. Here, Plaintiff's pleading does not rise above conclusory allegations that a failure to train officers caused the violation of her rights. Accordingly, the Court grants Defendant's motion to dismiss with respect to Plaintiff's failure-to-train theory. See *Peterson v. City of Chicago*, 2015 WL 13882814, at *4 (N.D. Ill. June 23, 2015) (dismissing a failure-to-train claim because it was based on conclusory allegations).

### B. Widespread Custom Stemming from Failure to Discipline

#### 1. Existence of a Widespread Custom or Policy

Defendant argues that Plaintiff's complaint fails to allege a widespread custom sufficient to show a de facto policy. Plaintiff's allegations regarding a widespread custom generally fall into three buckets: (1) allegations that CPD does not have an effective disciplinary system such that officers can commit violations without fear of consequences, (2) allegations about CPD's code of silence as described by then-Mayor Emanuel in 2015, the Chicago Police Accountability Taskforce in 2016, and the DOJ in 2017, (3) allegations about complaints and lawsuits against the individual Defendants.

Defendant first argues that Plaintiff's allegations regarding CPD's failure to discipline are too conclusory to support a claim. [18, at 3]. Plaintiff alleges that CPD fails to discipline its officers for "prior instances of similar misconduct, thereby leading Chicago Police Officers to believe their actions will never be scrutinized and, in that way, directly encouraging future abuses such as those affecting Plaintiff." [1, at ¶ 43]. For example, Plaintiff alleges that there are "findings of wrongdoing in a disproportionately small number of cases" against officers. [*Id.*, at ¶ 53]. She further alleges that the organizations designated to investigate officer misconduct such as IPRA and COPA do not reasonably investigate accusations and "refuse to recommend discipline even where the Officer has violated rights of citizens." [*Id.*, at ¶ 44]. Defendant contends that

these allegations "are precisely the type that [the Seventh Circuit in] *McCauley* found deficient." [16, at 8]. However, the allegations that the Seventh Circuit disregarded in *McCauley* were truly boilerplate. See, *e.g.*, *McCauley*, 671 F.3d at 617 ("[The City], through its agents, employees and/or servants, acting under color of law, at the level of official policy, practice, and custom, with deliberate, callous, and conscious indifference to McCauley's constitutional rights, authorized, tolerated, and institutionalized the practices and ratified the illegal conduct herein detailed, and at all times material to this Complaint, [the City] had interrelated de facto policies, practices, and customs." (alterations in original)).

Here, by contrast, Plaintiff's allegations are "more than simply legal conclusions," and courts in this district find similar allegations sufficient to withstand dismissal. *Turner v. M.B. Fin. Bank*, 2017 WL 4390367, at *9 (N.D. Ill. Oct. 3, 2017) (finding that "[a]lthough borderline," a similar complaint contained "enough factual allegations" to make the plaintiff's claims plausible); see also *Sledd v. Lindsay*, 102 F.3d 282, 289 (7th Cir. 1996) (holding that the district court incorrectly dismissed a *Monell* claim where the complaint alleged "that the City and the CPD maintained a code of silence; that disciplinary complaints almost never resulted in official censure; and that this practice hurt [the plaintiff] * * * by making the officers believe their actions would never be scrutinized"); *Ferguson v. Cook Cnty.*, 2021 WL 3115207, at *12 (N.D. Ill. July 22, 2021) (explaining that "[c]ourts in this district have denied motions to dismiss, motions for summary judgment, and motions to vacate jury verdicts which have been premised on a similar theory of *Monell* liability" and collecting cases); *Peterson*, 2015 WL 13882814, at *4 (finding that similar allegations were "not conclusory" and instead "allow[ed] the Court to draw the reasonable inference that the City maintained practices that caused Plaintiff's alleged constitutional deprivations, and they put Defendant on notice of the allegedly unconstitutional practices at

8

issue"); *Byrne v. City of Chicago*, 447 F. Supp. 3d 707, 712–13 (N.D. Ill. 2019) (finding that similar allegations "suffice to forestall dismissal at the pleading stage"). In fact, Plaintiff's allegations are more similar to those that the *McCauley* court did accept as true than to the ones that it disregarded as conclusory. See, *e.g.*, *McCauley*, 671 F.3d at 618 (accepting as true the allegation that the defendant violated the plaintiff's rights by "maintaining a policy or custom of failing to timely arrest violators of protective orders"). Further, Plaintiff alleges other facts supporting the existence of a code of silence and facts specific to the individual Defendants. Although Defendant takes issue with these allegations, as described below, the allegations in concert adequately support Plaintiff's *Monell* claim.

With respect to the DOJ report, the Defendant argues that the findings referenced by Plaintiff are "extraordinarily vague, provide no temporal context and present only general conclusions." [18, at 7]. However, as alleged in the complaint, the DOJ report found that Defendant's practices impede the investigation of officer misconduct, that these investigations are neither fair nor complete, that Defendants fail to prevent officers from deliberately concealing misconduct, and that the discipline system does not effectively deter misconduct. [1, at ¶ 55]. Further, the DOJ report itself contains more detailed findings.[2] Perhaps if this report or the other report and statements relied on by Plaintiff were the only allegations regarding the *Monell* claim, Defendant's argument would carry the day. But the Court finds that, in the context of the entire complaint, the allegations about these reports and statements are appropriate to support Plaintiff's *Monell* claim at least at this early stage of the case. See *Baskins v. Gilmore*, 2018 WL 4699847, at *5–8 (N.D. Ill. Sept. 30, 2018) (considering the DOJ report when declining to dismiss a *Monell* claim); *Arrington v. City of Chicago*, 2018 WL 620036, at *4 (N.D. Ill. Jan. 30, 2018) (explaining

---

[2] The Court may take judicial notice of the DOJ report as it is public record. See *Tuduj v. Sanofi-Aventis U.S. LLC*, 721 F. App'x 496, 498 (7th Cir. 2018).

that "[t]he Seventh Circuit has held that government reports such as the DOJ Report at issue here can be admissible evidence of municipal notice relevant to a *Monell* claim" (citing *Daniel v. Cook Cnty.*, 833 F.3d 728, 740–42 (7th Cir. 2016))).

Defendant also contends that Plaintiff failed to allege a widespread custom because she "fails to provide even one example of 'similar misconduct'" and has at most alleged only random events. [16, at 4, 7]. True, to prove a *Monell* claim, "the plaintiff must demonstrate that there is a policy at issue rather than a random event." *Thomas v. Cook Cnty. Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2010). However, in *White v. City of Chicago*, 829 F.3d 837 (7th Cir. 2016), the Seventh Circuit warned that courts may not apply a heightened pleading standard to *Monell* claims and held that a district court erred in dismissing a *Monell* claim that was "based upon the sole allegation" that the Defendant "acted in accordance with a widespread practice" when seeking a warrant with respect to him, *id.* at 843–44. After *White,* district courts have recognized that "a plaintiff raising a *Monell* claim may rely solely on his own experience, rather than being required to plead examples of other individuals' experiences." *Williams v. City of Chicago*, 315 F. Supp. 3d 1060, 1079 (N.D. Ill. 2018); see also *Ferguson*, 2021 WL 3115207, at *13 (collecting cases). It is telling that many of Defendant's cases on what is required to demonstrate a pattern of misconduct [see 16, at 7], were decided at summary judgment, where Plaintiff's burden is higher.

Moreover, Plaintiff here did allege facts specific to the Defendants. For example, the four individual Defendants each had between 3 and 28 complaints related to illegal searches filed against them, none of which led to any discipline. [1, at ¶¶ 49–52]. Defendant argues that these allegations are too vague because they provide no details about the conduct underlying the complaints. [16, at 6; 18, at 4–6]. However, at the pleading stage, the fact that these complaints related to illegal searches suffices. Further, other courts consider the number of complaints against

defendant officers in finding that a plaintiff stated a *Monell* claim.³ See *Sledd*, 102 F.3d at 289; *Ferguson*, 2021 WL 3115207, at *13; *cf. Boone v. City of Chicago*, 2018 WL 1014509, at *2 (N.D. Ill. Feb. 22, 2018) (finding the plaintiff did not adequately allege a *Monell* claim in part because the complaint did not specify even the general subject matter of the complaints against the defendant officers). In sum, Plaintiff's allegation of a widespread custom is sufficient to meet Rule 8's pleading standard.

### 2. Deliberate Indifference

Defendant next argues that Plaintiff failed to allege that it was deliberately indifferent. To demonstrate that Defendant is liable for a harmful custom or practice, Plaintiff must allege that Defendant was "'deliberately indifferent as to [the] known or obvious consequences.' In other words, [it] must have been aware of the risk created by the custom or practice and must have failed to take appropriate steps to protect the plaintiff." *Thomas*, 604 F.3d at 303 (first alteration in original) (quoting *Gable v. City of Chicago*, 296 F.3d 531, 537 (7th Cir. 2002)). Defendant argues that it has taken many remedial measures, such as revising its search warrant policy, and that these remedial measures demonstrate that it was not deliberately indifferent. [16, at 11–12; 18, at 8–10]. However, many of these measures occurred after the search at issue here and therefore do not speak to whether the City was deliberately indifferent at the time of the constitutional violation.

---

³ The Court recognizes that the Seventh Circuit has explained that "the number of complaints filed, without more, indicates nothing." *Strauss v. City of Chicago*, 760 F.2d 765, 768–69 (7th Cir. 1985). However, the Court follows other district courts distinguishing *Strauss* on the ground that the Plaintiff here has "pleaded the 'more' that is necessary—[she] allege[s] that the complaints have been inadequately investigated and have generally been classified 'not sustained' even though the majority are allegedly meritorious." *McLin By & Through Harvey v. City of Chicago*, 742 F. Supp. 994, 999 (N.D. Ill. 1990); see also *Williams v. City of Chicago*, 658 F. Supp. 147, 155 (N.D. Ill. 1987) (explaining that "unlike the numbers in *Strauss*," the number of complaints alleged by the plaintiff, "with more, could mean something, and plaintiff has at least hinted at what her 'more' will be).

11

Before the search, Defendant established COPA and the Public Safety Deputy within the Office of the City Inspector General ("OIG").[4]

Defendant relies primarily on *Gable v. City of Chicago*, 296 F.3d 531 (7th Cir. 2002), and *Lapre v. City of Chicago*, 911 F.3d 424 (7th Cir. 2018). However, in those cases, there was a clear causal relationship between the remedial measures and the alleged constitutional violations such that it is clear that the measures were taken with the purpose of reducing the complained of harm. See *Gable*, 296 F.3d at 539 (finding that the remedial measures taken had "been successful in decreasing the" complained of harm); *Lapre*, 911 F.3d at 432 (plaintiff alleged a violation based on use of horizontal bars in lockup facilities but the defendant had already begun replacing the horizontal bars with vertical ones at the time of the alleged violation). And, more importantly, *Gable* and *Lapre* were decided at summary judgment, where the records were more developed and the plaintiffs' burdens were higher. See *Gable*, 296 F.3d at 533; *Lapre*, 911 F.3d at 432. Here, the Court cannot say that the mere establishment of COPA and the OIG Public Safety Deputy establishes that Defendant was not deliberately indifferent as a matter of law. See *Howard v. Evans*, 2020 WL 5630430, at *4 (N.D. Ill. Sept. 21, 2020) (finding that the defendants' argument that they could not be subject to *Monell* liability because they had made improvements at the time of the alleged violation could not "be resolved on a motion to dismiss").

    3.    **Causation**

Defendant briefly argues that Plaintiff's complaint fails to demonstrate causation. For a municipality to face *Monell* liability for a widespread custom, that custom must be the "'moving force' behind the deprivation." *Wilson v. Cook Cnty.*, 742 F.3d 775, 780 (7th Cir. 2014) (quoting *Teesdale v. City of Chicago*, 690 F.3d 829, 833 (7th Cir. 2012)). Defendant argues that Plaintiff

---

[4] The Court may take judicial notice of the ordinances establishing these offices as they are public record. See *Tuduj*, 721 F. App'x at 498.

(1) fails to allege a widespread custom and (2) even if she has, she fails to plausibly allege that the custom caused the alleged violation. [16, at 14–15; 18, at 10–13]. Plaintiff alleges that the widespread customs discussed above "were the moving force behind the violations of" her rights. [1, at ¶ 63]. The Court need not accept mere legal conclusions, but this conclusion is supported by the factual allegations discussed above: namely that CPD fails to discipline its officers for "prior instances of similar misconduct, thereby leading Chicago Police Officers to believe their actions will never be scrutinized and, in that way, directly encouraging future abuses such as those affecting Plaintiff," among other allegations [1, at ¶ 43]. These allegations are sufficient at the motion-to-dismiss stage. See *Baskins*, 2018 WL 4699847, at *5 (finding that, at the motion-to-dismiss stage, the plaintiff "adequately plead[ed] that the City knew about the code of silence and that the code emboldened officers to engage in misconduct and cover it up, so the City could be deemed the 'moving force' behind the violations"); *Peterson*, 2015 WL 13882814, at *5–6 (finding that "one could reasonably infer" causation based on similar allegations that a failure to discipline and code of silence "lead[] officers to perpetrate the kinds of constitutional deprivations Plaintiff allegedly suffered").

**IV.	Conclusion**

For the reasons above, Defendant's motion [16] is denied. Counsel are directed to file a joint status report no later than September 24, 2021 that includes (a) a proposed discovery plan and (b) a statement in regard to any settlement discussions and/or any mutual request for a referral to the assigned Magistrate Judge for a settlement conference. The Court will set further case management deadlines following review of the joint status report.


Dated: September 10, 2021	_____
	Robert M. Dow, Jr.
	United States District Judge