IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Della Taylor, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 20 C 7001 |
| | ) | |
| v. | ) | Judge Robert M. Dow, Jr. |
| | ) | |
| City of Chicago Police Officers Ronald Norway, Star No. 6797, Edwin Utreras, Star No. 19901, Scott McKenna, Star No. 3942, Joy McClain, Star No. 4915, Unknown and Unnamed City of Chicago Police Officers, and The City of Chicago, | ) ) ) ) ) ) ) | Magistrate Judge Susan E. Cox |
| Defendants. | ) | |

**DEFENDANT CITY OF CHICAGO'S MOTION TO BIFURCATE *MONELL*
DISCOVERY AND TRIAL**

Defendant, City of Chicago, ("City"), by and through its attorneys, Klein, Thorpe and Jenkins, Ltd., and pursuant to Rule 42(b) of the Federal Rules of Civil Procedure("FRCP"), moves this Court to (1) bifurcate Plaintiff's *Monell* claims from those against Chicago Police Department ("CPD") officers Ronald Norway("Norway"), Edwin Utreras ("Utreras"), Scott McKenna ("McKenna") and Joy McClain ("McClain") ("Defendant Officers"); (2) stay discovery and postpone trial on the *Monell* claims until resolution of Plaintiff's claims against Defendant Officers; and (3) enter the Limited Consent to Entry of Judgment ("Consent") (attached and referred to herein as Exhibit A). In support thereof, the City states as follows:

**Introduction**

This case arises from a search warrant executed at Plaintiff's residence at 602 West 111th Street, Chicago, Illinois, on December 10, 2018. *Doc. #: 1* at ¶¶ 10, 17. Plaintiff alleges Defendant Officer Utreras, on December 10, 2018, falsified information to fraudulently obtain a "J. Doe" warrant to search her residence for the purported purpose of obtaining evidence of cocaine

1

possession and/or cocaine sales. *Id.* at ¶¶ 12, 16. The target of the search warrant allegedly was an unknown male black nicknamed "T-man." *Id.* at ¶ 13. According to Plaintiff, none of the lawful residents ever had been called "T-man," and at no point on December 10, 2018 was an individual named "T-man" at the residence. *Id.* at ¶¶ 14-15. Plaintiff alleges Defendant Officers lacked legal or probable cause to enter her residence and execute the search warrant. *Id.* at ¶ 18.

According to Plaintiff, Defendant Officers conducted a "lengthy search" of her residence and failed to recover any evidence of cocaine or cocaine sales. *Doc. #: 1* at ¶ 20. Defendant Officers, however, falsely claimed in police reports they found .4 grams of crack cocaine and a digital scale. *Id.* Plaintiff asserts further that Defendant Officers illegally seized $1500 she had in her bedroom and, in failing to inventory this money, stole it from her. *Id.* at ¶¶ 21, 22, 24, 25. Additionally, Defendant Officers allegedly failed to record execution of the search warrant with body worn cameras. *Id.* at ¶ 26. Defendant Officers' purported December 10, 2018 actions allegedly caused Plaintiff injuries, including humiliation and indignities and "great mental and emotional pain and suffering." *Id.* at ¶ 28.

Plaintiff, based on the allegations above and pursuant to § 1983, filed a three-count complaint asserting: (1) a claim against all Defendant Officers for unreasonable search in violation of Plaintiff's Fourth Amendment rights (Count I); (2) a claim against Defendant Officer Utreras for an unreasonable procurement of a search warrant in violation of Plaintiff's Fourth Amendment rights; and (3) a *Monell* claim alleging City customs, policies and practices encouraged and facilitated the purported unconstitutional behavior that injured Plaintiff. *Doc. #: 1* at ¶¶ 41, 42, 43. The *Monell* claims entail a number of sub-parts. For instance, Plaintiff alleges generally CPD deficient policies and procedures relating to obtaining and executing search warrants that include: CPD officers failing to make reasonable efforts to corroborate or properly investigate informant-provided information; fabricating or concealing material information in order to obtain warrants; and failing

to use body worn cameras to record search warrant executions. *Id.* at ¶ 42. Plaintiff also broadly asserts, as a matter of practice, that CPD facilitates the type of purportedly unconstitutional conduct at issue by failing to adequately punish and discipline prior instances of similar misconduct, thereby leading Chicago police officers to believe their actions will not be examined and investigated. *Id.* at ¶ 43. Plaintiff identifies the Independent Review Authority, COPA and Internal Affairs as promoting CPD officers' lack of concern through their failure to reasonably investigate accusations of civil rights violations and an unwillingness to recommend discipline for unconstitutional conduct. *Id.* Additionally, Plaintiff alleges a CPD "code of silence" that further shields officers from accountability for violating citizens' civil rights. *Id.* at ¶ 44.

The City moves to bifurcate Plaintiff's *Monell* cause of action from her § 1983 claims against the Defendant Officers. Bifurcation will promote judicial economy by allowing the parties to move forward efficiently to resolve Counts I and II, thereby avoiding the need to litigate Plaintiff's *Monell* claim. Bifurcation will relieve the City and Plaintiff from the burden of complicated, time consuming and costly custom, policy and practice discovery, thus saving valuable judicial and municipal resources. Additionally, bifurcation will prevent the prejudice to all parties likely to arise if Counts I, II and III are tried together before a single jury.

I. **Legal Standard Governing A Motion To Bifurcate**

FRCP Rule 42(b) provides that "[f]or convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues [or] claims[.]" So long as bifurcation "will not prejudice the non-moving party or violate the Seventh Amendment," the moving party need only show that bifurcation would either promote judicial economy or prevent prejudice. *Chlopek v. Fed. Ins. Co.*, 499 F.3d 692, 700 (7th Cir. 2007)(citations omitted). Only one of these criteria need be met for bifurcation to be appropriate. *Berry v. Deloney*, 28 F.3d 604, 610 (7th Cir. 1994). Should bifurcation be warranted, FRCP Rule 26 allows the court to stay discovery on

3

*Monell* claims. Courts grant motions to bifurcate because first litigating claims against individual defendants means the parties may never reach the *Monell* claims; thereby conserving the resources of both the parties and the court. *Jones v. City of Chicago*, 1999 WL 160228 (N.D. Ill. Mar. 10, 1999) at *2.

Bifurcation motions are "now commonplace" and "there is a growing body of precedent in this district for both granting and denying bifurcation in § 1983 cases." *See, e.g., Allison v. Gallagher*, 2012 WL 4760863 (N.D. Ill. Oct. 5, 2012) at *1 (quoting *Elrod v. City of Chicago*, 2007 WL 3241352 (N.D. Ill. Nov.1, 2007) at *2). "Such motions and the inclination of many judges to grant them stems in large part from the recognition that, often, 'claims of municipal liability require an extensive amount of work on the part of plaintiff's attorneys and experts, and an extraordinary amount of money must be spent in order to prepare and prove them.'" *Ezell v. City of Chicago*, 2019 WL 3776616 (N.D.Ill. August 12, 2019) at *3 (quoting *Moore v. City of Chicago*, 2007 WL 3037121 at *9 (N.D.Ill. Oct. 15, 2007)). The decision to bifurcate a *Monell* claim is left to the court's discretion and requires the court to "balance considerations of convenience, economy, expedition, and prejudice, depending on the peculiar facts and circumstances of each case." *Estate of Loury by Hudson v. City of Chicago*, 2017 WL 1425594 (N.D. Ill. Apr. 20, 2017) at *2.

## II. Judicial Economy Favors Bifurcation of Plaintiff's *Monell* Claim

Judicial economy represents one basis for granting a bifurcation motion with two general factors at issue: whether a finding as to the liability of the individual defendants is likely to eliminate the need for a trial on the *Monell* claims and the burdens posed by the *Monell* claims. *Taylor v. Kachiroubas*, 2013 WL 6050492 (N.D.Ill. November 15, 2013) at *3. Here, both factors clearly favor bifurcation of Plaintiff's *Monell* action from the claims against Defendant Officers.

### A. A Single Trial Of The Claims Against The Defendant Officers Will Resolve The Litigation

A plaintiff generally cannot prevail on a *Monell* claim without first establishing an underlying constitutional violation. *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986). The Seventh Circuit,

4

in *Thomas v. Cook County Sheriff's Department*, concluded that a rule requiring individual liability before a municipality could be liable for damages under *Monell* was "an unreasonable extension" of *Heller*. 604 F.3d 293, 305 (7th Cir. 2010). According to *Thomas*, the rule in *Heller*, was narrower, "[a] municipality can be held liable under *Monell*, even when its officers are not unless such a finding would create an inconsistent verdict." *Id.* To determine whether a municipality's liability depends on that of individual officers, courts must examine the nature of alleged constitutional violations, the theories of municipal liability, and the defenses set forth. *Id.*

### 1. Plaintiff's alleged constitutional claims

Here, the complaint alleges § 1983 claims against all Defendant Officers for subjecting Plaintiff to an unreasonable search in violation of her Fourth Amendment rights (Count I) and against Defendant Officer Utreras for unreasonable procurement of a search warrant (Count II) with the result that, "Plaintiff was deprived of rights, privileges and immunities, secured to him [sic] by the Fourth Amendment to the Constitution of the United States and laws enacted thereunder." *Doc. #: 1* at ¶ 38. Plaintiff alleges in her *Monell* claim that "the Chicago Police Department's deficient policies and procedures relating to obtaining and executing search warrants" facilitated the purported Fourth Amendment violations by the Defendant Officers. *Doc. #: 1* at ¶ 42. The specific "deficient" policies and procedures include: failing to make reasonable efforts to corroborate or properly investigate information from informants; fabricating or concealing material information in order to obtain warrants; and failing to record search warrant execution with body worn cameras. *Id.* Plaintiff further seeks to hold the City liable under *Monell* for the CPD's purported practice of failing to punish and discipline adequately prior incidents of similar misconduct, "thereby leading Chicago Police Officers to believe their actions will never be scrutinized and, in that way, directly encouraging future abuses such as those affecting Plaintiff." *Id.* at ¶ 43.

5

2. **Plaintiff's theory of liability against the City depends on Defendant Officers' constitutional violations**

In *Thomas*, Cook County's liability was premised on governmental deliberate indifference to a policy or practice of understaffing that led to systemic failures to respond to medical requests. *Thomas v. Cook County Sheriff's Department*, 604 F.3d at 305. Cook County could be liable for its deliberate indifference to the systemic failures without individual employees found liable for unconstitutional conduct. In contrast, Plaintiff's theory of *Monell* liability depends on the misconduct of Defendant Officers. If a jury determines Defendant Officers did not engage in an unreasonable search of Plaintiff's residence or that Defendant Officer Utreras did not unreasonably procure a search warrant, then *Monell* liability fails. The alleged harm to Plaintiff did not happen independently due to purported City policies and practices but through Defendant Officers' actions. Therefore, Defendant Officers first must be found liable on Counts I or II before the City could be liable on Count III. *Williams v. City of Chicago*, 315 F.Supp.3d 1060, 1080-81 (N.D.Ill. 2018) (motion to bifurcate granted where the Court determines alleged City practices of coercing false testimony, creating false or misleading investigative reports and failing to preserve exculpatory evidence through the use of street files could "only manifest itself through the officers' actions" and "a finding of municipal liability is predicated on a finding first that the Officers themselves were liable") *Fuery v. City of Chicago*, 2015 WL 715281 (N.D.Ill. February 17, 2015) at * 2 (same); *Veal v. Kachiroubas*, 2014 WL 321708 (N.D.Ill. January 29, 2014) at * 3 (same); *Ezell v. City of Chicago*, 2019 WL 3776616 (N.D.Ill. August 12, 2019) at * 1 (Court grants City's motion to bifurcate and stay *Monell* discovery in case where the plaintiff alleged § 1983 claims against defendant officers, *inter alia*, for fabricating evidence and withholding and suppressing exculpatory evidence).

Plaintiff alleges *Monell* failure to train claims. *Doc. #: 1* at ¶ 41. Such claims presuppose constitutional violations by Defendant Officers. *Fuery v. City of Chicago*, 2015 WL 715281 at 2; *Veal v. Kachiroubas*, 2014 WL 321708 at * 4; *Castillo v. City of Chicago*, 2012 WL 1658350 (N.D.Ill. May 11,

6

2012) at * 5. For these reasons, judicial economy recommends bifurcation of Plaintiff's *Monell* claim from those brought against the Defendant Officers.

### 3. The City's qualified immunity affirmative defense does not preclude bifurcation

*Thomas* directs the Court to consider any affirmative defenses set forth by Defendants. 604 F.3d at 305. The City, in its answer to the complaint, asserted qualified immunity as cited by Defendant Officers, on its behalf as well. *Doc. #: 24* at 16. The City will consent to the Limited Entry of Judgment ("Consent") (attached and referred to as Exhibit A) against it for compensatory damages, plus reasonable attorney fees if a Defendant Officer is found to have violated Plaintiff's constitutional rights. The Consent will apply even if Defendant Officers successfully assert a qualified immunity defense on the ground that the constitutionally offensive conduct did not violate a clearly established law. Exhibit A. Thus, the necessary constitutional violation for Plaintiff's *Monell* claim exists even if Defendant Officers assert qualified immunity. *Taylor v. Kachiroubas*, 2013 WL 6050492 at * 4 ("Moreover, the most relevant issue is whether the individual defendants committed a constitutional violation that is a prerequisite for the Village of Dixmoor's liability, not whether the individual defendants can actually be held liable for the violation"). The fact that Defendant Officers assert qualified immunity affirmative defenses does not tip the scale against bifurcation in this case where the promotion of judicial economy is so apparent. *Veal v. Kachiroubas*, 2014 WL 321708 at * 4 ("Thus, the mere fact that [defendants] assert qualified immunity defenses does not weigh so heavily against bifurcation as to persuade the court to allow all issues in this suit to proceed together").

### B. Bifurcation Will Reduce The Burden *Monell* Discovery Will Impose On The Litigation

Plaintiff alleges the Fourth Amendment deprivations she purportedly suffered resulted from several CPD policy failures. Plaintiff identifies broad categories of allegedly failed policies and

7

practices and sub-divides these categories further. To wit, Plaintiff alleges the purported misconduct of Defendant Officers on December 10, 2018 resulted from deficient CPD policies and practices relating to obtaining and executing search warrants. CPD officers allegedly failed to make reasonable attempts to corroborate or properly investigate information provided by informants, fabricated or concealed material information to obtain warrants, and failed to record execution of search warrants with body worn cameras. *Doc. #: 1* at ¶ 42. Plaintiff also alleges the CPD promoted the misconduct she purportedly endured by failing to punish and discipline adequately prior instances of similar misconduct. This policy failure purportedly occurred because the Independent Review Authority, COPA and Internal Affairs failed to investigate reasonably accusations of civil rights violations and did not recommend discipline for violations. *Id.* at ¶ 43. Finally, Plaintiff attributes Defendant Officers' purported misconduct to a widespread "code of silence" whereby CPD officers do not report misconduct committed by their colleagues. *Id.* at ¶ 44. To date, Plaintiff has not served any *Monell* discovery on the City; however, the nature of her claims against the City make the burdensomeness of Count III discovery apparent.[1]

A *Monell* claim against the City ". . . obviously entails elements of proof that are not involved when the plaintiff sues only the officers claimed to have been directly involved in the deprivation of his rights." *Medina v. City of Chicago*, 100 F.Supp.2d 893, 894 (N.D.Ill. 2000). Plaintiff's broad, citywide *Monell* allegations with more specific sub-parts refer to a "sufficiently wide-ranging set of potentially relevant policies and practices" that will require "onerous" and burdensome discovery. *Terry v. Cook County Department of Corrections*, 2010 WL 2720754 (N.D.Ill. July 8, 2010) at * 2; *Readus v. Dercola*, 2012 WL 1533167 (N.D.Ill. May 1, 2012) at * 3. A stay of *Monell* discovery in this case will allow the parties to focus on and resolve the specific December 10, 2018 incident and reach the

---

[1] This Court denied the City's motion to dismiss Count III on September 10, 2021 (*Doc. #: 21*). The City filed its answer and affirmative defenses in response to the complaint on October 1, 2021. Therefore, it is not surprising Plaintiff, to date, has not served written discovery related to her *Monell* claim on the City.

8

merits of the claims against Defendant Officers. Such an approach clearly promotes judicial economy, especially in a case where Plaintiff's *Monell* claims cannot go forward without findings that Defendant Officers violated her Fourth Amendment rights. *Horton v. City of Chicago*, 2016 WL 316878 (N.D.Ill. January 26, 2016) at * 3-4. Even if some overlap exists between *Monell* discovery and that pertaining to claims against Defendant Officers, the benefit of bifurcation to the efficient administration of the lawsuit cannot be overlooked. *Williams v. City of Chicago*, 315 F.Supp.3d 1060, 1082-83 (N.D.Ill. 2018); *Andersen v. City of Chicago*, 2016 WL 7240765 (N.D.Ill. December 14, 2016) at * 5; *Fuery v. City of Chicago*, 2015 WL 715281 at * 3.

### III. Bifurcation Will Prevent Prejudice To The Parties

Rule 42(b) requires that bifurcation not result in prejudice to any party. Bifurcation may be proper solely as a means to avoid prejudice that would result from a joint trial. *Bradford v. City of Chicago*, 2019 WL 5208852 (N.D.Ill. October 16, 2019) at * 3. Here, bifurcation will prevent prejudice that likely would result from a trial of all Plaintiff's claims against Defendant officers and the City.

#### A. The Defendant Officers Will Avoid Prejudice

Introducing evidence regarding Plaintiff's *Monell* claims creates a substantial risk of prejudice for Defendant Officers that will undermine their ability to receive a fair trial. *Veal v. Kachiroubas*, 2014 WL 321708 at *6. This danger weighs in favor of bifurcation. *Lopez v. City of Chicago*, 2002 WL 335346 (N.D. Ill. Mar. 1, 2002) at *2 ("[w]ithout bifurcation, the jury would likely hear evidence against the City of Chicago's various acts of alleged police misconduct committed by numerous non-party officers to establish a policy or practice. Such evidence can be prejudicial to the individual defendants."). In a § 1983 claim, defendants' liability rests on "their own misdeeds but not for anyone else's." *Burks v. Raemisch*, 555 F.3d 592, 596 (7th Cir. 2009). While the risk of prejudice to Defendant Officers may be mitigated by limiting instructions from the court and motions *in limine*,

9

the effectiveness of such measures is speculative and downplays the influence that hearing evidence about the misconduct of non-party officers in the *Monell* case can have on jurors. *Readus v. Dercola*, 2012 WL 1533167 (N.D.Ill. May 1, 2012) at * 4 ("Moreover, presenting evidence to the jury regarding a citywide policy, practice or custom involving multiple improper police actions poses a danger of undue prejudice to the defendant officers by creating the perception that the police department routinely acts improperly, even if the officers acted properly in this case"); *Ojeda-Beltran v. Lucio*, 2008 WL 2782815 at *3 (There is a "real danger that evidence admissible on the issues relating to conduct by the City . . . will contaminate the mind of the finder of fact in its consideration of the liability of the other defendant[s]") (quoting *Ismail v. Cohen*, 706 F.Supp. 243, 252 (S.D.N.Y. 1989)). If, as Plaintiff may contend, an overlap of evidence related to claims against Defendant Officers and *Monell* exists, such a purported overlap also may lead to prejudice at a joint trial. *Fuery v. City of Chicago*, 2015 WL 715281 at * 3 (Court notes with regard to the plaintiffs' "substantial overlap" contention that, "[b]ut the presentation of broad evidence of City customs and policies is not appropriate to prove Plaintiffs' claims against [defendant]"). Presenting jurors with substantial evidence of non-party officer misconduct to prove alleged CPD policies and practices claims invites them to find Defendant Officers guilty by association, rather than deciding liability based on their own actions. Defendant Officers would suffer unfair prejudice at trial if bifurcation is denied.

### B. The City Will Avoid Prejudice

A risk of prejudice also exists for the City if all of Plaintiff's claims are tried together. *Monell* and its progeny provide a means to hold a municipality liable for its own conduct; it is *not* a means to find a municipality liable through *respondeat superior*. *EG Milestone v. City of Monroe, Wis.*, 665 F.3d 774, 780 (7th Cir. 2011); *Lewis v. City of Chicago*, 496 F.3d 645, 656 (7th Cir. 2007) ("Misbehaving employees are responsible for their own conduct, 'units of local government are responsible only for

their policies rather than misconduct by their workers'") (*Fairley v. Fermaint*, 482 F.3d 897, 904 (7th Cir. 2007)).

The claims against Defendant Officers allege serious and troubling police misconduct. Evidence of this misconduct at trial may cause the jury to hold the City liable on the *Monell* claim without jurors giving the allegations against the City due deliberation and examination because they are appalled at Defendant Officers' conduct, an especially significant risk with Plaintiff asserting her residence was ransacked and approximately $1500 she set aside to pay for Christmas gifts was taken during execution of the search warrant. *Doc. #: 1* at ¶¶ 21, 22-25. This risk of unfair prejudice can be avoided by bifurcating the *Monell* claim from those against Defendant Officers.

### C. Plaintiff Will Avoid Prejudice

Courts have noted that the time and effort spent developing a *Monell* claim can divert attention and resources from the claims against individual defendants to a plaintiff's detriment. *See Clarett v. Suroviak*, 2011 WL 37838 (N.D.Ill. Jan. 3, 2011) at *2 ("bifurcation is generally likely to bring an earlier disposition of the suit because bifurcation allows a bypass of discovery relating to the *Monell* claims, which can add significant, and possibly unnecessary, time, effort, cost, and complications to the discovery process."); *see also Almaraz v. Haleas*, 602 F. Supp. 2d 920, 926 (N.D. Ill. 2008) (*Monell* discovery is much broader than discovery against individual defendants and could result in lengthy and costly discovery unnecessary to the claims against the individual defendants). Conversely, a bifurcation and stay of the *Monell* claims does not bar Plaintiff from asserting his *Monell* claim should he prevail on his claims against Defendants Officers. *Andersen v. City of Chicago*, 2016 WL 7240765 (N.D.Ill. December 14, 2016) at *6. If there is anything to pursue following the resolution of claims against Defendant Officers, Plaintiff is free to go forward; bifurcation is not the same as a dismissal. *Carr v. City of N. Chicago*, 908 F.Supp.2d 926, 935 (N.D.Ill. 2012).

The City's consent to entry of judgment against it for compensatory damages, plus reasonable attorney fees, without requiring Plaintiff to prove the elements of § 1983 municipal liability if a Defendant Officer is found to have violated Plaintiff's constitutional rights renders litigation of Count III unnecessary. Exhibit A at ¶ 4. The Consent allows Plaintiff to obtain a judgment against the City for full compensation for her damages, as long as she proves her constitutional rights were violated, thereby avoiding altogether litigation of the *Monell* claim. This would be true even if Defendant Officers successfully assert a qualified immunity defense on the ground that the offending conduct did not violate a clearly established right. Exhibit A at ¶ 5.

Plaintiff may argue her *Monell* claim concerns deterrence as well as damages. *See Owen v. City of Independence*, 445 U.S. 622, 651-652 (1980). Some Northern District courts accept the "non-economic benefit" argument against bifurcation. *See Rodriguez v. City of Chicago*, 429 F.Supp.3d 537, 541 (N.D.Ill. 2019) (indicating numerous courts have recognized the importance of weighing non-monetary considerations in the bifurcation analysis and citing several decisions denying motions to bifurcate based at least in part on the non-economic deterrence and reform interests of plaintiffs bringing *Monell* claims). Other courts view significant damages awards as providing effective deterrence and reform. In *Parker v. Banner*, Judge Zagel noted that, "I read *Owen* to say that deterrence of future violations will occur because the city will have to pay damages and, if damages grow too large, then the city will change its policies, customs and practices." 479 F.Supp.2d 827, 829 (N.D.Ill. 2007). *See also Castillo v. City of Chicago*, 2012 WL 1658350 at * 6 (The Court finds "no reason to believe that money damages have any less deterrent effect" than non-economic factors such as holding the City accountable through the adjudicative process).

In *State of Illinois v. City of Chicago*, 17 C 6260, ECF No. 703-1, (N.D. Ill. Jan 31, 2019), the City entered a consent agreement with the State of Illinois requiring reforms to the City's policing that Plaintiff may be seeking through her *Monell* claim. The Consent Decree includes a section

12

addressing CPD supervision. *State of Illinois v. City of Chicago*. 17 C 6260 ECF No. 703-1 at ¶¶ 341-376. The Consent Decree also sets forth an extensive section, "Accountability and Transparency," that reforms how the CPD receives and tracks misconduct complaints, conducts disciplinary investigations, and maintains data pertaining to police officer discipline. *Id.* at ¶¶ 419-565. Given the CPD reforms required by the Consent Decree, the non-economic interest Plaintiff may seek to promote are being addressed through the Consent Decree thereby alleviating the need to litigate the *Monell* claim to judgment. *See Ezell v. City of Chicago*, 2019 WL 3776616 at *6 (Court observes that a number of police reforms were initiated without *Monell* liability).

**WHEREFORE,** for all the above-stated reasons, the City of Chicago respectfully requests that this Honorable Court grant its motion to bifurcate for purposes of discovery and trial Plaintiff's *Monell* claim from her claims against Defendant Officers, and for any further relief deemed just and fair.

Respectfully submitted,

CELIA MEZA
Corporation Counsel of the City of Chicago
By: /s/Allen Wall
Attorney Allen Wall
Klein, Thorpe and Jenkins, Ltd.
20 North Wacker Drive, Suite 1660
Chicago, Illinois 60606

Lance C. Malina, Special Assistant Corporation Counsel (lcmalina@ktjlaw.com)
Allen Wall, Special Assistant Corporation Counsel (jawall@ktjlaw.com)
Anthony G. Becknek, Special Assistant Corporation Counsel (agbecknek@ktjlaw.com)
Klein, Thorpe and Jenkins, Ltd.
20 North Wacker Drive, Suite 1660
Chicago, Illinois 60606  (312) 984-6400
*Attorneys for Defendant City of Chicago*